| | | |
|---|---|---|
| JAMIE PARKER<br>107 Baltimore Avenue<br>Glen Burnie, Maryland 21061, | * | IN THE |
| | * | CIRCUIT COURT |
| *Plaintiff*, | * | OF |
| v. | * | MARYLAND |
| ADVANCE STORES COMPANY, INC.,<br>d/b/a Advance Auto Parts<br>5673 Airport Road<br>Roanoke, VA 24012, | * | FOR |
| | * | ANNE ARUNDEL COUNTY |
| | * | Case No.: _____ |
| *Defendant*. | | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Jamie Parker, Plaintiff, by John B. Stolarz, her attorney, sues Advance Stores Company, Inc., d/b/a Advance Auto Parts, Defendant, and states as follows:

### PARTIES

1. Plaintiff, Ms. Parker, is a citizen of Maryland, and a resident of Anne Arundel County.

2. Defendant Advance Stores Company, Inc., ("AAP") is a Virginia corporation that, at all times pertinent hereto was doing business at various locations in Maryland, under the trade name "Advance Auto Parts."

3. At all times pertinent hereto, Plaintiff was employed by Defendant at various Advance Auto Parts retail locations, including Glen Burnie, located in Anne Arundel County.  At the time of her termination, Ms. Parker was employed at Defendant's retail facility located at 6724 Ritchie Hwy, Glen Burnie, MD 21061.

4. Defendant AAP, was, at all pertinent times, Ms. Parker's employer.

5. At all pertinent times, an employee of Defendant AAP.

6.  As set forth more fully below, Defendant AAP was required, at all pertinent times, to pay; but failed to pay, overtime wages to Ms. Parker.

## FACTS COMMON TO ALL COUNTS

7. Ms. Parker became employed by AAP in 2008

8. There was, and is not a written contract of employment.

9. At all pertinent hereto, Ms. Parker was an exemplary employee.

10. For an example and without limitation, Ms. Parker was commended for her performance on or about February 12, 2019.

11. At all times pertinent hereto, Ms. Parker performed all necessary and appropriate tasks as an employee.

12. As a direct and proximate result of the foregoing acts, Ms. Parker earned wages.

13. AAP consistently demanded that Ms. Parker work in excess of 40 hours per week.

14. Ms. Parker was entitled to be paid overtime pay.

15. AAP failed and refused to pay overtime pay to Ms. Parker.

16. Ms. Parker's employment was terminated by AAP on or about November 26, 2019.

17. The termination was wrongful and based entirely on pretext.

18. At the time of termination, wages, including unpaid overtime wages, were due and owing to Ms. Parker.

19. AAP has failed and refused to pay wages to Ms. Parker, despite demand therefore.

20. As an excellent employee, and was promoted by the Defendant in 2016.

21. As an excellent employee, Ms. Parker was later offered a promotion to the hub store 9002 Takoma Park, which she declined for personal reasons.

22. In 2016, Ms. Parker was given the title of "manager" or "general manager."

23. Ms. Parker was not an administrative employee of AAP.

24. Ms. Parker was not an executive employee of AAP.

25. Ms. Parker was not a professional employee of AAP.

26. AAP did not authorize or permit Ms. Parker to exercise discretion or independent judgment free from immediate direction or supervision.

27. AAP did not authorize or permit Ms. Parker to exercise discretion or independent judgment to hire or fire employees a/k/a "team members."

28. To hire or fire employees a/k/a "team members", Ms. Parker was required to obtain permission and approval from AAP personnel, including Mr. Fabian Baker.

29. In order to obtain permission or approval, Ms. Parker was required to submit a TMR, or team member action report.

30. AAP did not authorize or permit Ms. Parker to promote or demote any employee a/k/a "team member."

31. AAP did not authorize or permit Ms. Parker to send an employee home if the employee a/k/a/ "team member" was not performing the employee's job duties.

32. AAP did not authorize or permit Ms. Parker to control inventory, and she could not determine what to order for the she allegedly "managed."

33. AAP did not authorize or permit Ms. Parker to determine sales prices.  All pricing was set by AAP which sent a "red box" with all promotions and sales.

34. AAP knowingly and inaccurately attempted to misclassify Ms. Parker as an exempt employee.

35. The wages due and owing to Ms. Parker are for unpaid overtime hours worked during the three year period prior to the commencement of this action.

36. Ms. Parker does not have pay stubs for that entire period of time and, despite demand therefore, they have not been provided by AAP.

37. Using the pay stub for the period ended November 23, 2019, Ms. Parker estimates that she should have been paid $ 59.56 for each overtime hour worked.

38. Ms. Parker was not paid overtime.

39. Ms. Parker estimates that she worked at least 10 overtime hours per week.

40. Ms. Parker estimates that, at 4.33 weeks per month, she was required to work 43.3 Hours per month of overtime for which she was not paid.

41. Her claim is for unpaid overtime for three years prior to the commencement of this action until the date of wrongful termination in November 2019.

42. Defendant's failure to pay wages to Ms. Parker was and is willful and intentional.

43. Based on information and belief, the failure to pay was willful and intentional because it was based in part on actual animus.

44. AAP had actual animus against Ms. Parker.

45. Mr. Fabian Baker is an executive of AAP.

46. Mr. Baker, as a manager of AAP, demonstrated this animus toward Ms. Parker.

47. Mr. Baker took punitive actions against Ms. Parker in retaliation for her use of leave under the Family and Medical Leave Act.

48. For an example of animus, and without limitation, on or about May 20, 2019, Mr. Baker placed "big rocks" in Ms. Parker's way toward a desired personnel change. He did so based on her use of FMLA leave.

49. For an example of animus, and without limitation, Mr. Baker attempted to deny a fully proper and appropriate leave request because Ms. Parker allegedly failed to take actions while on FMLA leave.

   a. For an example and without limitation, Mr. Baker sought to deny a leave request and he wrote, "While you were out for 6 weeks [on FMLA leave], your team members haven't had a vacation."
   b. When Ms. Parker responded that she had been on FMLA leave and stated other facts, Mr. Baker replied: "While you were away [on FMLA leave] Laura Bittner, had to work hard to rectify a vacation hours situation regarding Bridgette Wellington."
   c. Ms. Parker's proper leave request was denied in part due to this FMLA retaliation.

50. For an example of animus, on June 27, 2019, Ms. Parker forwarded an employee email to AAP management. The employee email stated: "An employee [Jane Doe] has come to me stating that they like our General Manager [Ms. Parker} and will purposely brush up against the General Manager to cop a feel because she likes the General Manager and I told her this behavior is not professional."

51. Rather than investigate this allegation, AAP management directed Ms. Parker to meet with, and continue working with Jane Doe.

52. For an additional example of animus, AAP trumped up inaccurate allegations to wrongfully terminate Ms. Parker.

   a. Jane Doe complained to AAP of alleged time keeping irregularities,
   b. Jane Doe apparently alleged that Ms. Parker was involved.
   c. AAP began its investigation in August 2019.
   d. AAP did not contact Ms. Parker until November 2019.

  e. Ms. Parker accurately reported that she ad properly made some changes to time entries, as was customary and usual.

  f. Ms. Parker stated that the changes were accurate and she noted that each employee whose time was changed had signed weekly time sheets confirming that fact.

  g. Nevertheless, as part of its "investigation," AAP inquired about changes to time entries as far back as January 2019.

  h. When Ms. Parker allegedly could not explain ministerial acts of almost ten months ago, and based in part on Jane Doe's allegations, and after 11 years of faithful and exemplary service, with both commendations and promotions, and after penalizing Ms. Parker for taking FMLA leave for health reasons, and after forcing Ms. Parker to meet and work with Jane Doe, AAP used the bogus time keeping investigation to terminate Ms. Parker.

53. AAP failed to pay Ms. Parker for her overtime hours.

54. Plaintiff estimates that Defendant owes her overtime wages of approximately $ 85,105.28.

55. More than two weeks have elapsed since Defendant was required to have paid wages to Ms. Parker.

56. None of the wages that were and are due and owing was a mere gratuity.  Each had been earned and was payable.

57. Plaintiff has made demand for payment.  Defendant has refused.

## COUNT I
### (Fair Labor Standards Act. 29 U.S.C. §201, *et seq.*)

58. All of the foregoing allegations are incorporated and realleged herein.

59. Plaintiff was at all pertinent time an employee of Defendant under the FLSA.

60. Defendant was at all pertinent times Plaintiff's employer under the FLSA.

61. Defendant has failed and refused to pay wages due to Plaintiff, which payments are compelled by the FLSA.

62. Specifically and without limitation, Defendant failed and refused to make overtime

payments described above.

63. Defendant's failures were willful and intentional.

WHEREFORE, Plaintiff Jamie Parker, requests a judgment against Defendant for:

A. Damages in an amount in excess of $ 75,000.00;

B. Prejudgment interest;

C. Liquidated damages under Federal law;

D. Reasonable attorneys' fees and costs.

E. Costs; and

F. Such other and further relief as may be necessary or appropriate.

## COUNT II
### Maryland Wage and Hour Law
### Md. Code Ann., LE §§ 3-401, *et seq.* ("WHL"))

64. All of the foregoing allegations are incorporated and realleged herein.

65. Defendant has failed and refused to pay the overtime wages due Plaintiff.

66. Plaintiff has sustained consequential damages as a result.  For an example, and without limitation, Plaintiff has been forced and compelled to acquire and expend funds that should have come from the unpaid wages.

67. Defendants' failures were willful and intentional.

68. The failure to pay Plaintiff the overtime wages due her was not the result of a bona fide dispute.

69. Defendant' failure to pay Plaintiff the overtime wages constitutes a violation of LE §§ 3-401, *et seq*.

WHEREFORE, Plaintiff Jamie Parker, requests a judgment against Defendant for:

A. Damages in the amount in excess of $ 75,000.00;

B. Prejudgment interest;

C. Damages trebled under Maryland law;

D  Reasonable attorneys' fees and costs.

E. Costs; and

F. Such other and further relief as may be necessary or appropriate.

**COUNT III**
**Maryland Wage Payment and Collection Law**
**Md. Code Ann., LE §§ 3-501, *et seq.* ("WPCL")**

70. All of the foregoing allegations are incorporated and realleged herein.

71. Defendant has failed and refused to pay the overtime wages due Plaintiff.

72. Plaintiff has sustained consequential damages as a result. For an example, and without limitation, Plaintiff has been forced and compelled to acquire and expend funds that should have come from the unpaid wages.

73. Defendants' failures were willful and intentional.

74. The failure to pay Plaintiff the overtime wages due her was not the result of a bona fide dispute.

75. Defendant' failure to pay Plaintiff the overtime wages constitutes a violation of LE §§ 3-401, *et seq.*

WHEREFORE, Plaintiff Jamie Parker, requests a judgment against Defendant for:

A. Damages in the amount in excess of $ 75,000.00;

B. Prejudgment interest;

C. Damages trebled under Maryland law;

D Reasonable attorneys' fees and costs.

E. Costs; and

F. Such other and further relief as may be necessary or appropriate.

/s/ John B. Stolarz  _____
John B. Stolarz
Maryland Attorney
CPF  No.: 7911010330
The Stolarz Law Firm
6509 York Road
Baltimore, MD 21212
(410) 532-7200
(410) 372-0529 (fax)
stolarz@verizon.net

Attorney for Plaintiff

## **DEMAND FOR JURY TRIAL**

Jamie Parker, Plaintiff, by John B. Stolarz, her attorney, demands a jury trial on all issues.

/s/ John B. Stolarz_____
John B. Stolarz

Attorney for Plaintiff

W:\5368\Pleadings\Complaint and Demand for Jury Trial.wpd